**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

GARY CARTER,

*Plaintiff,*

vs.

Case No. 20-CV-2325-EFM-KGG

DOLLAR GENERAL CORPORATION and
DG RETAIL, LLC,

*Defendants.*

**MEMORANDUM AND ORDER**

As Plaintiff Gary Carter approached a Dollar General store in Garden City, Kansas, he

tripped over a raised curb and fell through the glass front door of the store, resulting in several

injuries.  Plaintiff filed this action seeking to recover from the landlord of the building housing the

store, PLMR I, LLC,[1] the tenant and operator of the Dollar General store, DG Retail, LLC, and its

parent company, Dollar General Corporation.[2]  Plaintiff's claims sound in negligence under a

---

[1] Plaintiff has since stipulated to the dismissal of PLMR, leaving only Dollar General and DG Retail as defendants in this action.

[2] DG Retail's corporate disclosure statement reveals that Dollar General Corporation is actually four degrees removed from being DG Retail's direct parent:  Dolgencorp of Texas, Inc is DG Retail's parent; DG Strategic I, LLC is Dolgencorp's parent; DG Promotions, Inc. is the parent of DG Strategic; and finally, Dollar General Corporation is the parent of DG Promotions.  Because referring to Dollar General Corporation as DG Retail's corporate great-great-grandparent is cumbersome and the distinction is immaterial for present purposes, the Court is comfortable referring to Dollar General Corporation simply as DG Retail's corporate parent.

theory of premises liability.  Specifically, Plaintiff alleges that Defendants, by virtue of their

possession and control over the premises and notice of the hazard posed by the curb and the door,

owed him a duty to mark or otherwise warn patrons of the curb and to use safety glass in the door.

Defendants breached that duty, according to Plaintiff, by failing to properly mark the curb and by

maintaining a front door made of plate or annealed glass rather than safety glass.

DG Retail and Dollar General now move for summary judgment under Federal Rule of

Civil Procedure 56.  DG Retail argues that it owed no duty to Plaintiff with respect to either the

curb or the door because its lease left both conditions under the control of the landlord, PLMR.  In

the alternative, DG Retail argues that Plaintiff's expert opinion that the glass in question was

annealed must be excluded, leaving no genuine dispute for trial on the issue of breach.  Dollar

General argues that it owed no duty to Plaintiff as it was not a party to the lease of the premises

and did not otherwise possess or control the premises.  For the reasons set out below, the Court

grants in part and denies in part DG Retail's motion for summary judgment (Doc. 59) and wholly

grants Dollar General's motion for summary judgment (Doc. 59).

## I.        Factual and Procedural Background[3]

This case is best described as a trip-and-fall.  On June 21, 2019, Plaintiff was approaching

a Dollar General store in Garden City, Kansas when he tripped on a raised curb connecting the

parking lot to the sidewalk in front of the store.  Plaintiff's momentum carried him forward several

feet through the glass door at the entrance of the store, which shattered on impact.  Because of his

unexpectedly horizontal entrance, Plaintiff sustained lacerations to both arms, which were treated

surgically, along with lacerations to his chest and head.  Both ends of Plaintiff's fall, the curb at

---

[3] In accordance with summary judgment procedures, the Court has laid out the uncontroverted material facts in the light most favorable to the non-moving party.

its inception and the door at its conclusion, as the focal points of Defendants alleged negligence, bear a more detailed discussion.

## A.     The Curb

The curb that Plaintiff tripped on is several feet from the entrance to the Dollar General store and is essentially a small step up from the parking lot to the sidewalk in front of the store. At the time of Plaintiff's fall, this curb was either unmarked or marked by a worn coat of spray paint.  Kimberly Gray, the manager of the Dollar General store, testified that she had previously marked the curb several times before Plaintiff's fall.  She would spray paint the curb on an "as-needed" basis.[4]  Ms. Gray testified that she last painted the curb approximately six months before Plaintiff's fall.  Ms. Gray informed her District Manager, Jim Kramer, that she was painting the curb, but states that she took it upon herself to do so without any prompting from her supervisors or any other person.

Though Ms. Gray undertook to paint the curb on occasion, no provision of the lease agreement for the Dollar General store required Ms. Gray to maintain the curb in question.  Nor did any provision require any other employee of DG Retail to maintain the curb.  The most recent lease agreement modification by landlord PLMR and tenant DG Retail,[5] dated April 3, 2019 and in force at the time of Plaintiff's fall, placed the responsibility for all common area maintenance on the landlord.  "Common areas" under the lease include "parking areas, exits, entrances, access

---

[4] Kimberly Gray Dep., Doc. 62-1, at 50:5–7.

[5] Plaintiff repeatedly contends that Defendant Dollar General Corporation was also a party to this lease, suggesting that DG Retail entered into the lease as the agent of and on behalf of its parent company, Dollar General Corporation.  The lease itself, however, offers no support for this contention.  Plaintiff attempts to support this contention by citation to the deposition of Kimberly Gray, but as laid out below, this is insufficient to create a genuine dispute as to the parties to the lease.

roads, driveways, [and] sidewalks," among other areas.[6]  The curb in question, as the meeting point between two common areas under the lease, is necessarily itself a common area and the responsibility of PLMR under the lease.

**B.      The Door**

The front glass door of the Dollar General store was the end point of Plaintiff's fall, and when shattered, was the ultimate source of the several lacerations he sustained.  Because Plaintiff claims that Defendants owed him a duty to use safety glass in the front door and breached that duty by using annealed glass, the type of glass used in the door is central to Plaintiff's claims. Plaintiff and Defendants sharply disagree about what type of glass was in the door, and both offer an expert report in support of their contentions.

John Wright, Plaintiff's expert, concluded that the door in question was made of plate or annealed glass.  Mr. Wright, a civil engineer with a background as a project manager in site development, is currently employed by Semke Forensics, where he serves as a consultant engineer for both insurance adjusters and parties to legal cases.  During his time at Semke, Mr. Wright testified that he has seen approximately one or two other cases that required him to opine on whether certain glass was safety glass or annealed glass.  Undisclosed research from those cases led Mr. Wright to state that safety glass does not cause severe injuries because, when it breaks, its structural composition causes it to break into small pieces without any long, dangerous shards. Based on the severity of Plaintiff's injuries, Mr. Wright concluded the glass was annealed glass, which can break into large shards of glass capable of causing injuries like Plaintiff's.

---

[6] Lease Modification Agreement (Defs.' Ex. B), Doc. 61-2, at 2.

Defendants' expert, Lewis Street Glass, arrived at the opposite conclusion. Three estimators from Lewis viewed surveillance footage of Plaintiff's fall and all agreed that the glass in question was safety glass. They agree with Mr. Wright that safety glass breaks into small pieces when shattered and is not supposed to severely cut a person, but instead conclude that the glass that cut Plaintiff was safety glass. This conclusion is apparently based on their unspecified experience in distinguishing between types of glass. Lewis does not state whether its estimators considered the extent of Plaintiff's injuries when rendering their decision. One estimator did visit the Dollar General store and determined that the glass door next to the one Plaintiff fell through is made of safety glass, based on a marking from the manufacturer on the door.

## C.    The Claims

Based on Defendants' alleged failures with respect to the curb and the door, Plaintiff claims that they are liable for his injuries under a theory of premises liability. Specifically, Plaintiff alleges that Defendants were negligent in failing to mark or otherwise warn of the raised curb between the parking lot and the sidewalk. Further, Plaintiff alleges Defendants were negligent in maintaining an entry door made from annealed glass rather than safety glass. Defendants move for summary judgment on all of Plaintiff's claims.

## II.    Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law.[7] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered

---

[7] Fed. R. Civ. P. 56(a).

evidence permits a reasonable jury to decide the issue in either party's favor.[8]  The movant bears

the initial burden of proof, though "a movant that will not bear the burden of persuasion at trial

need not negate the nonmovant's claim."[9]  "Such a movant may make its prima facie demonstration

simply by pointing out to the court a lack of evidence for the nonmovant on an essential element

of the nonmovant's claim."[10]  The nonmovant must then bring forth "specific facts showing a

genuine issue for trial."[11]  These facts must be clearly identified through affidavits, deposition

transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for

summary judgment.[12]  The court views all evidence and draws "reasonable inferences therefrom

in the light most favorable to the nonmoving party."[13]

### III.    Analysis

DG Retail and Dollar General both move for summary judgment on Plaintiff's claims of

premises liability.  At the outset, the Court notes that all parties agree, because this Court has

subject matter jurisdiction under 28 U.S.C. § 1332, Kansas substantive law governs this action

under *Erie R. Co. v. Tompkins*.[14]

DG Retail contends that any duty to mark or otherwise warn of the raised curb, as well as

to ensure the glass door was made of safety glass, fell on its landlord, PLMR, under Kansas

---

[8] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006) (quoting *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1224 (10th Cir. 2001)).

[9] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

[10] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp.*, 477 U.S. at 325).

[11] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (quoting *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999)).

[12] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 670–71).

[13] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004) (quoting *N. Tex. Prod. Credit Ass'n v. McCurtain Cty. Nat'l Bank*, 222 F.3d 800, 806 (10th Cir. 2000)).

[14] 304 U.S. 64 (1938).

premises liability law.  In the alternative, DG Retail argues that even if it owed a duty to install

safety glass in the door, Plaintiff has failed to create a genuine issue of fact that DG retail breached

that duty because Plaintiff's expert testimony must be excluded under Federal Rule of Evidence

702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[15]  Without that expert testimony, DG

Retail contends there is no evidence from which a reasonable jury could find in Plaintiff's favor

on the issue of breach.  DG Retail has not filed a separate *Daubert* motion with this Court, nor has

the Court held a *Daubert* hearing on the admissibility of the expert testimony proffered in this

case.

Dollar General contends it owed no duty to Plaintiff under Kansas law because it was

neither the owner, nor the party in possession and control of the premises where Plaintiff was

injured.  The Court examines the arguments of each Defendant in turn.

**A.      Defendant DG Retail**

*1.       DG Retail's Duty to Plaintiff to Mark or Otherwise Warn of the Curb*

Any duty to mark the curb under Kansas premises liability law did not fall on DG Retail,

but rather on its landlord, PLMR.[16]  Under Kansas law, in the case of an injury on leased premises,

generally the tenant "as the person in possession of the land [has] the burden of maintaining the

premises in a reasonably safe condition."[17]  This burden instead falls on the landlord for those

common areas of the premises that "do not pass to the tenant, but remain in the possession and

---

[15] 509 U.S. 579 (1993).

[16] Much ink has been spilled by both Plaintiff and Defendants in attempting to determine whether the duty to paint the curb or otherwise warn approaching persons, if it exists, falls on the PLMR or DG Retail.  No party disputes that there is such a duty under Kansas law; only where the duty fell.  As such, the Court assumes for the purposes of this order that a party in possession and control of a raised curb that poses a trip hazard to approaching persons has a duty to mark such curb or otherwise warn persons of the danger.

[17] *Borders v. Roseberry*, 216 Kan. 486, 532 P.2d 1366, 1368 (1975).

control of the landlord."[18] Therefore, to determine whether the landlord or tenant has the duty to maintain or warn of a defect in a common area, a court must determine which party "occupies the common area with the intent to control it."[19] In making such a determination, Kansas courts have looked to the terms of the lease, particularly the provisions of the lease assigning responsibility to maintain the common area in question.[20]

As a matter of law, only PLMR had possession and control over the parking lot and sidewalks, and naturally the curb where the two meet, under the terms of the lease. The modified lease agreement between PLMR and DG Retail, in force at the time of Plaintiff's fall, states that "[a]ll areas . . . including, without limitation, parking areas, exits, entrances, access roads, driveways, sidewalks . . . shall be defined as the 'Common Areas.' "[21] Though DG Retail and its customers were permitted to use these areas, the responsibility for common areas remained with the landlord. Specifically, the landlord was required to "maintain[] all signs, sidewalks, landscaped areas, and parking areas."[22] PLMR, as landlord, therefore had a responsibility to maintain the curb in question under the lease. Under Kansas law, this means that PLMR had possession and control of the curb and any duty to paint it or otherwise warn approaching persons fell on it. DG Retail had no similar duty because, under the terms of the lease, it did not have possession and control of the curb.

---

[18] *Id.* at 1370.

[19] *Hall v. Quivira Square Dev. Co.*, 9 Kan. App. 2d 243, 675 P.2d 931, 932 (1984).

[20] *See Moore v. Muntzel*, 231 Kan. 46, 642 P.2d 957, 959 (1982); *Hall*, 675 P.2d at 933; *Ritter v. Gas-Mart USA, Inc*, 2020 WL 1074728, at *7 (Kan. Ct. App. 2020) ("[T]he commercial lease provisions negotiated at arm's length by the parties govern over any common law doctrine related to premises liability.").

[21] Lease Modification Agreement (Defs.' Ex. B), Doc. 61-2, at 2.

[22] *Id.*

Plaintiff urges the Court to find that DG Retail had sufficient possession and control of the offending curb to give rise to a duty to paint it or otherwise warn approaching persons about the danger it posed.  Plaintiff repeatedly cites Kimberly Gray's admission that she undertook to paint the curb several times before Plaintiff's fall as evidence that DG Retail had sufficient control of the curb, or alternatively that DG Retail at least had notice of the danger posed by the curb. But Plaintiff cites to no Kansas cases that would make Ms. Gray's action or any resulting notice to DG Retail legally relevant.  Kansas courts, when determining whether a landlord or tenant had a duty with respect to a plaintiff injured on the leased premises, have made that determination by looking at how the lease allocates responsibility for the offending condition of the premises.[23] Plaintiff cites to no legal authority that lends support to the idea that a party, though not responsible under the lease for an area of the premises, may still have sufficient possession and control to give rise to a legal duty to maintain that area, simply because that party took some action with respect to that area or had notice that there is a dangerous condition in that area.  Because Plaintiff fails to offer any support for his argument, the Court simply cannot agree that under Kansas law, Kimberly Gray's painting of the curb evidenced sufficient possession and control to give rise to a duty to maintain it.

Plaintiff also contends that either § 324A or § 323 of the Restatement (Second) of Torts supply the basis for concluding DG Retail owed him a duty to mark or otherwise warn persons of the raised curb under Kansas law.  Section 324A, adopted by the Kansas Supreme Court as an accurate statement of Kansas law,[24] reads as follows:

---

[23] *See Moore*, 642 P.2d at 959; *Hall*, 675 P.2d at 933; *Ritter*, 2020 WL 1074728, at *7.

[24] *Schmeck v. City of Shawnee*, 232 Kan. 11, 651 P.2d 585, 597 (1982).

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
(a) his failure to exercise reasonable care increases the risk of such harm, or
(b) he has undertaken to perform a duty owed by the other to the third person, or
(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.[25]

Without considering the substance of Plaintiff's argument under § 324A, Defendants dismiss it because they believe there is no third person to be benefitted here, as necessary in an action under § 324A.[26]  But Defendants are mistaken.  A reasonable characterization of the facts before this Court is that DG Retail, by its undertaking to perform PLMR's obligation under the lease to mark the curb, should have recognized that such services were necessary for the protection of Plaintiff, a third person.  Section 324A is an appropriate vehicle, under the facts of the case, to argue DG Retail owed Plaintiff a duty to paint or otherwise mark the curb.

Turning now to Plaintiff's substantive § 324A argument, Plaintiff apparently contends that under subsection (b), DG Retail undertook a duty owed by PLMR to Plaintiff.  Thus, Plaintiff argues, PLMR had the duty under Kansas law, as described above, to paint or otherwise mark the curb, and DG Retail undertook that duty when Kimberly Gray painted the curb several times to protect DG Retail's customers, including Plaintiff.

Plaintiff's contention is once again unsupported by Kansas law.  Kansas courts have held that "§ 324A creates liability when one party undertakes to perform services for another,"  but simply undertaking to perform a service for another is not sufficient to create a duty under

---

[25] Restatement (Second) of Torts § 324A (Am. Law Inst. 1965).

[26] *Cunningham v. Braum's Ice Cream & Dairy Stores*, 276 Kan. 883, 80 P.3d 35, 40 (2003).

§ 324A.[27]  Rather, "the person to whom the services are directed must accept such services in lieu of, or in addition to, such person's obligation to perform the services."[28]  Though Plaintiff suggests that Kimberly Gray's action in painting the curb is sufficient to show DG Retail assumed PLMR's responsibility for the curb, Kansas courts' interpretation of § 324A clearly requires Plaintiff to also show that PLMR *accepted* DG Retail's services or otherwise viewed DG Retail's actions as an assumption of its obligation to maintain the curb.[29]  Plaintiff offers no facts to make this showing. Therefore, as a matter of law, § 324A did not give rise to a duty by DG Retail to mark or otherwise warn persons of the raised curb.

Plaintiff further contends that § 323 of the Restatement (Second) of Torts, also adopted by the Kansas Supreme Court,[30] supports a conclusion that DG Retail owed Plaintiff a duty to mark or otherwise warn persons of the curb.  That section states:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
> (a) his failure to exercise such care increases the risk of such harm, or
> (b) the harm is suffered because of the other's reliance upon the undertaking.[31]

The primary difference between § 323 and § 324A is that § 323 does not involve a third party. Rather, the services undertaken by the defendant in a § 323 case were meant to directly benefit

---

[27] *Chadwell v. Clements*, 18 Kan. App. 2d 84, 847 P.2d 1344, 1349 (1993) (citing *Gooch v. Bethel A.M.E. Church*, 246 Kan. 663, 792 P.2d 993, 998 (1990)).

[28] *Gooch*, 792 P.2d at 1002.

[29] *See Chadwell*, 847 P.2d at 1349 ("[T]here is no indication . . . that the county viewed Beech's actions as an assumption of the county's obligation to maintain the road and crosswalks.").

[30] *Circle Land & Cattle Corp. v. Amoco Oil Co.*, 232 Kan. 482, 657 P.2d 532, 538 (1983).

[31] Restatement (Second) of Torts § 323 (Am. Law Inst. 1965).

"another," i.e., the plaintiff.  Plaintiff contends this section supports a conclusion that DG Retail owed him a duty to mark the curb.

Once again, Plaintiff's contentions run headlong into unfavorable Kansas law.  The Kansas Supreme Court has stated that there typically is "no liability [under § 323] where the [defendant's] conduct in no way aggravates the situation or misleads the plaintiff, and he is left no worse off than he was before."[32]  Further, if proceeding under a reliance theory under subsection (b), a plaintiff must provide some evidence that he relied on defendant's actions, such that he proceeded based on "a false impression that an undertaking . . . had been accomplished for [his] benefit."[33] Plaintiff here neither attempts to show that the conduct of DG Retail, through Ms. Gray's painting of the curb, aggravated the situation by increasing the danger or misleading Plaintiff to believe that the danger was removed, nor that he approached the Dollar General store with a false impression that the curb had been marked for his benefit.  Without some attempt from Plaintiff to support his contentions under either subsection of § 323, the Court cannot find that DG Retail owed Plaintiff a duty under that section.

As the final nail in the coffin of Plaintiff's § 323 claim, the comments to § 323 clearly state that "[t]he fact that the actor gratuitously starts in to aid another does not necessarily require him to continue his services."[34]  Rather, "[t]he actor may normally abandon his efforts at any time unless, by giving the aid, he has put the other in a worse position than he was in before the actor attempted to aid him."[35]  Plaintiff was not put in a worse position by DG Retail's conduct.  Before

---

[32] *Cunningham*, 80 P.3d at 41 (quoting *Burgess v. Perdue*, 239 Kan. 473, 721 P.2d 239, 246 (1986)).

[33] *Hancock v. United States*, 2001 WL 584357, at *3 (D. Kan. 2001).

[34] Restatement (Second) of Torts § 323 cmt. c.

[35] *Id.*

Ms. Gray undertook to paint the curb, it would have been unmarked.  When she failed to re-apply paint to the curb sometime before Plaintiff's fall, the curb was, at worst, unmarked.  Plaintiff was not put in a worse position as a result of DG Retail's conduct.  Accordingly, DG Retail did not owe any duty to Plaintiff under § 323.

In sum, under no legal theory can it be said that DG Retail owed a duty to Plaintiff to mark or otherwise warn of the raised curb.  Summary judgment is appropriate as to Plaintiff's claims based on DG Retail's alleged negligence in failing to mark or otherwise warn of the raised curb.

2.        *DG Retail's Duty to Install Safety Glass in the Door and its Alleged Breach of this Duty*

DG Retail contends, though very sparingly, that it owed no duty to Plaintiff with respect to the front glass door because it is also a "common area" under the lease, and therefore the responsibility of PLMR.  The most recent lease modification agreement between DG Retail and PLMR provides that "parking areas, exits, entrances, access roads, driveways," among other things, are all "common areas," the maintenance of which is the responsibility of the landlord.[36] DG Retail appears to focus on the words "exits" and "entrances" to argue that the front glass door falls within these two enumerated common areas.

The Court finds it is at least ambiguous whether these two words are references to the front glass door.  An equally plausible reading of that section of the lease is that it refers to "exits" and "entrances" of the parking areas, driveways, and other common areas referenced, rather than "exits" and "entrances" of the building, i.e., the front door.  This ambiguity creates a genuine issue as to whether the front glass door was the responsibility of DG Retail or PLMR under the lease,

---

[36] Lease Modification Agreement (Defs.' Ex. B), Doc. 61-2, at 2.

and therefore keeps this Court from concluding, as a matter of law, that DG Retail did not owe a duty to Plaintiff to ensure its front door was made of safety glass.[37]

DG Retail argues that even if it owed a duty to Plaintiff to ensure its front glass door was made of safety glass, there is no evidence it breached that duty by using anything other than safety glass in the door.  DG Retail contends Plaintiff's expert, who opined that the door was made of annealed glass rather than safety glass, must be excluded under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[38]  With no expert opinion on this issue, DG Retail contends there are no admissible facts from which a reasonable jury could conclude the door was not made of safety glass.  Curiously, despite making this *Daubert*-like challenge, DG Retail has neither filed a motion to exclude Plaintiff's expert testimony nor a motion for a *Daubert* hearing on Plaintiff's expert.

The Court agrees that expert testimony is necessary to determine what type of glass Plaintiff collided with during his fall, as distinguishing between types of glass is "too complex to fall within the common knowledge of the jury and is beyond the capability of a lay person to decide."[39]  However, on the record before it and without the benefit of a *Daubert* hearing, the Court has difficulty concluding that Plaintiff's expert must be excluded under Rule 702 and *Daubert*.

---

[37] Curiously, once again, neither party disputes that a duty exists under Kansas law for a party in possession and control of a glass door to ensure that door is constructed of safety glass.  The Court therefore assumes for the purposes of this order that such a duty exists under Kansas law.

[38] 509 U.S. 579 (1993).

[39] *Myrick v. Husqvarna Pro. Prod., Inc.*, 508 F. Supp. 3d 846, 864 (D. Kan. 2020) (quoting *Ho v. Michelin N.A., Inc.*, 520 F. App'x 658, 667 (10th Cir. 2013)).

Both experts in this case base their opinions on previous knowledge and experience.[40]  Mr. Wright, Plaintiff's expert, focused on the severity of Plaintiff's injuries to conclude that the glass could not have been safety glass and based this conclusion on his knowledge and experience that safety glass does not cause severe injuries of the type suffered by Plaintiff.  Mr. Wright, however, failed to specify in detail the basis for his experience and knowledge and how they lead to this conclusion.  DG Retail's expert, Lewis Street Glass, agreed with Mr. Wright that safety glass does not cause severe injuries, but nonetheless concluded the glass in the door was safety glass. The Lewis estimators viewed the glass on the surveillance tape of Plaintiff's fall and appeared to base their conclusion largely on the undisclosed experience of these estimators in differentiating between different types of glass.  It seems, then, that both experts, relying on a few facts, appear to base their conclusions on their knowledge and experience while failing to disclose with any detail how their experience leads to their proffered conclusion.

The Court feels it would be improper to simply exclude one or both of these expert opinions out of hand when neither a motion to exclude expert testimony, nor a motion for a *Daubert* hearing, is before the Court.  Accordingly, DG Retail's motion for summary judgment on Plaintiff's claims with respect to the front glass door is denied without prejudice to refiling.

**B.    Defendant Dollar General Corporation**

Defendant Dollar General is not a proper defendant in this action.  Plaintiff's claims under Kansas premises liability law are only proper against the party occupying the premises or otherwise in possession or control of the premises on which Plaintiff was injured.[41]  Dollar General

---

[40] *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) ("In other cases, the relevant reliability concerns may focus upon personal knowledge or experience.").

[41] *Gragg v. Wichita State Univ.*, 261 Kan. 1037, 934 P.2d 121, 130 (1997) (quoting *Rogers v. Omega Concrete Sys,, Inc.*, 20 Kan. App. 2d 1, 883 P.2d 1204, 1207 (1994)).

did not occupy or possess the premises as an owner or lessee, and there is no evidence it had control of the premises.  Plaintiff contends that Dollar General is "the same" as DG Retail, and therefore is in possession of the premises.[42]  Plaintiff bases this contention on legally irrelevant facts, such as the facts that DG Retail and Dollar General have the same lawyer and have made joint responses to discovery requests, as well as on deposition testimony from Kimberly Gray—a person not shown to have any knowledge on the corporate structure of DG Retail and Dollar General—that the two are "the same."[43]  This is insufficient to create a genuine dispute of fact that DG Retail and Dollar Generally Corporation are legally the same entity.  With no genuine dispute of fact, the Court must arrive at the inescapable conclusion that DG Retail and Dollar General are separate entities.  There is therefore no basis for concluding Dollar General owed Plaintiff any duty as it was not the occupying, possessor, or party in control of the premises on which he was injured. Dollar General is entitled to summary judgment on all of Plaintiff's claims.

**IT IS THEREFORE ORDERED** that Defendant DG Retail's motion for summary judgment (Doc. 59) is **GRANTED in part and DENIED in part** without prejudice to refiling**.**

**IT IS FURTHER ORDERED** that Defendant Dollar General Corporation's motion for summary judgment (Doc. 59) is **GRANTED**.  Dollar General Corporation is dismissed as a defendant in this action.

---

[42] Pl.'s Resp., Doc. 62, at 21.

[43] *Id.*; Kimberly Gray Dep., Doc. 62-1, at 32:18–21. This question and answer did not give a clear indication that Dollar General Corporation and DG Retail are the same.  Plaintiff's counsel asked Ms. Gray if she knew "the difference between Dollar General and DG Retail," to which she responded that "they're the same."  It is far from clear that this question was actually asking Ms. Gray to distinguish between Dollar General *Corporation* and DG Retail. Further, as mentioned above, Plaintiff's counsel laid no foundation to show Ms. Gray had any basis of knowledge to conclude that DG Retail and Dollar General Corporation are not legally separate entities.  This is insufficient to create a genuine dispute of fact.

**IT IS SO ORDERED.**

Dated this 22nd day of October, 2021.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE